Thank you. Each side will have 15 minutes. You'll keep your own time. And Mr. Anderson, when you're ready. Thank you, Your Honors. May it please the Court, Craig Anderson on behalf of Officers Smith and Huntsman. This is a Section 1983 excessive force case where the district court failed to properly apply the qualified immunity analysis. At its core, there's two main issues on this appeal. The first one is whether the district court acted appropriately when a sua sponte found that there was not probable cause for the mental health hold on Mr. Scott. And the second primary issue is whether the force used by the officers... Can you lean in a little bit to the microphones? I'm having some difficulty hearing you. I apologize. I never hear that, so I was actually standing back. Thank you. Yeah. So starting with the probable cause issue, the district court, without briefing or the benefit of counsel argument, just made the decision that there was not probable cause to perform the mental health hold on Mr. Scott. As this court is well aware, the issue of probable cause is an issue of law when the facts are not disputed. Here, the facts in this case clearly justified at least the detention of Mr. Scott to evaluate the severity of his mental health crisis. What the officers knew was that he had made a call to 911. He had reported that three men were trying to break into his apartment, that one of them had a saw and was trying to harm him. The officers learned that those facts were probably not accurate upon arrival. When the officers knocked on the door, Mr. Scott told them to break the door down. He told them to come in. The officers did not. They returned back to the base of the stairwell, called their sergeant, who said, you need to go make sure this gentleman's okay. When the officers returned, Mr. Scott did exit the apartment, but he was possessing two weapons. He was not aggressive. He was not violent towards the officers. But he was clearly in a state of distress possessing these weapons. When he placed himself against the wall, he told the officers, I have paranoid schizophrenia. He told them that he was in mental distress, and he said, please put me in the car. Because he had been the recipient of legal 2000s, which is the term in Nevada for a mental health hold on prior occasions. Because he had possessed two weapons, which he had voluntarily surrendered to the officers, there was a justifiable concern to at least pat him down to make sure there were no more weapons in play. Because the officers would have never turned him over to medical personnel or even conducted the investigation without first assuring that the scene was safe and that it was static. The district court ignored these facts and found that no reasonable officer could find that he was a danger to himself or others. In other words, the district court was implying the officer should have just left, leaving. Isn't this a disputed fact that whether or not he was dangerous? Your briefing, your argument today suggests that there is a dispute about whether or not Mr. Scott is dangerous, and we have to resolve that in favor of the plaintiff. Is that correct? No. The reason that it's not, it could be a disputed fact. The issue, though, is whether there was probable cause, which we know is a very low bar that is not a disputed, that can be decided as a matter of law if the facts are not disputed. And based upon these facts, any reasonable officer, any reasonable officer would have concluded that further investigation and detention was necessary to determine whether Mr. Scott was a danger to himself or others. Because under the district court's theory, if they had just left and then he had either harmed himself or someone else, then there would be a lawsuit with them saying you were just barely there. You were there. You could have taken him into custody and got him the mental health he needed, but you left. And so it is not a disputed fact because the facts that give rise to the probable cause are not disputed. And I would point out again that there was no briefing on this issue with the district court. And under Rule 56F, if the district court felt that there was not probable cause, because it was never raised by the plaintiff, they never argued there was not probable cause to detain Mr. Scott. Their own expert agreed there was probable cause to detain Mr. Scott. Their complaint says that he, at paragraph 116, that he was suffering from a severe mental episode. In their opposition to motion for summary judgment, they argued they had a legal basis to take him into custody. And so everyone agreed that there was probable cause to take him into custody until the court... Is anyone suggesting that they should have just left? Instead, they take him down, they tackle him. They called the sergeant. Why didn't they call the mental health support? They were able to call the sergeant. Why weren't they able to call mental health support instead of taking him down? Okay. Well, I think initially when they got him outside, the first step that any reasonable police officer would do would be to make sure the scene is safe. So they wanted to pat him down, make sure there were no other weapons, because he had already had two weapons in his possession, and then interview him and investigate as to the severity of his mental illness, his intentions, because he had referenced that people were trying to kill him. And he had already... At that point, he's a victim. At that point, he's definitely a victim. But once they realize those people are not there, that he is hallucinating, that he is present, they then have an obligation to him under the community caretaking function to get him the mental health that he needs. And so he is always a victim. I mean, there are some minor crimes potentially at issue here, but the officers were not interested in investigating those, and I concede that. Their interest was solely in getting him the mental health help that he needed. So he's not being accused of committing a crime. The only reason there's probable cause, potentially, is he's able to harm himself or he's able to harm others. Correct. But he's been compliant, so I understand the need to tackle him. He's been compliant, but it does become concerning, and I'm not trying to overstate the case here, but it does become concerning when he will not allow the pat down. And still, the officers stand back. They're not armed. They're not threatening him. I mean, they're not displaying weapons, and they're trying to address him and have a conversation. Then he goes and unzips his zipper and begins reaching towards his jacket, and that's when they simply step in and grab his arms. And as you can tell from the video, there's not an immediate action to take him to the ground. They're attempting to pat him down from a standing position, but at that point, he does begin to show some minor resistance. And that's where this case becomes extremely similar, and almost on all fours, to the Drummond case, where the gentleman was exhibiting similar type behavior, not necessarily a danger to himself and others in the parking lot. Only Drummond was known not to be armed. He was only thought to be potentially a danger to himself, and in that case, the officers immediately knocked him to the ground and then effectuated handcuffing, which the Ninth Circuit found was reasonable. They were not concerned about the pre-handcuffing force on Drummond. And so this case, with respect to the detention and the taking him to the ground, and fortunately, we have the video in this case, which shows this was certainly not a violent takedown, that the officers each guided him down with one arm. He was placed on his back. They were talking, saying, watch his head. There were the rocks. They were monitoring him consistently. And so under Drummond, if an officer was familiar with that case, they would believe that this action was reasonable. Do you agree that Drummond recognized that the use of body weight force creates a risk of asphyxiation? Correct. I mean, Drummond clearly stands for the proposition that once a suspect is prone, restrained, and no longer a threat, that the continued, and the word in Drummond is prolonged, use of body weight can cause the risk of asphyxiation. I think that's the established rule. But Drummond applies to post-handcuffing actions of the officers. It does not apply to pre-handcuffing force of using body weight to effectuate handcuffing. And every court that has interpreted Drummond in this circuit, and I don't think there's any other published ones, but unpublished in the district courts, have made it clear that Drummond applies to post-handcuffing force. And here, wasn't Mr. Scott essentially, wasn't the equivalent of being handcuffed? His hands were behind his back. They were restrained. What's the meaningful difference? Okay, so at what point are we talking? So when he goes down, there is a struggle for roughly a minute and 30 seconds where the officers are struggling with him. He's on his back for a large portion of that time. They eventually roll him over. And then once he's handcuffed, the officer remains on him for eight seconds. And so he got off of him within eight seconds of handcuffing. And so that would be the time period which no court has found that that short of a period of time is unreasonable in this type of a situation. Most recently in A and B versus, I think it's city or county of San Diego, a panel of the circuit in a non-published decision found that 30 seconds after a suspect stopped moving and was no longer resisting was not unreasonable. And the shortest period of time that a court has found is the Abston case, which is another unpublished decision, which was a minute and seven seconds. And they found that to potentially be unreasonable or a jury question. But in A and B, the court found that 30 seconds was reasonable. And here at most, we have eight seconds where Officer Huntsman remained on Mr. Scott. So that force, there's no case that plaintiff has cited to the district court founder that I found that the force used prior to handcuffing was unreasonable. That the officers were not entitled to place him on the ground, use their body weight, control his hands, and handcuff him. What their obligations were under Drummond and its progeny is to get off him as soon as the handcuffing is completed and it's safe to do so. And I would argue, even with the probable cause issue, which I do not think is a hard issue to decide, I think that based upon the admissions of the plaintiff and the facts of this case, it was reasonable to attempt to detain him and to investigate the severity of his mental health crisis. That even if there was not probable cause, he did not have a right to resist under Luschtel and Arpin, which say that a suspect can only resist an unlawful detention if the officer is demonstrating bad faith or provocative conduct. Which, based upon the video, there's no evidence of that in here. I don't think there's any dispute that everybody was trying to do the right thing. I have five minutes, which I'll reserve. Or do you have any other questions? I do have a question, counsel. Can you cite to me any case law where our court, the Ninth Circuit, has reversed a district court's factual findings because the objective evidence blatantly contradicted those findings? Because I believe that's what we need to be able to do here, correct? We need to find that the district court's finding on probable cause, if I'm understanding you correctly, is blatantly contradictory to the facts in the case. On the probable cause issue. Hughes v. Rodriguez. Hughes, H-U-G-H-E-S, v. Rodriguez. There was also a case, Malou, B-A-L-L-O-U, which it's a published decision that the court reversed part because the video blatantly contradicted and then found other parts of the video to not blatantly contradict. So it was kind of a partial. So does the video in this situation plainly contradict? On which issue? The force of the probable cause. On the probable cause. I'm only arguing it on the probable cause. Yes, I believe that by watching the video, any reasonable officer who came into contact with Mr. Scott would perceive that he was definitely in a crisis situation, that he definitely was seeking help. In fact, he asked for the help. And that's why this case is so tragic, is they were trying to accomplish the goal that he asked them to be there for. When he says, put me in the car, when he asks them, when he, you know, hands the knife to and they take it, it is clearly any reasonable officer would be, we've got to find out what's wrong with this person. And we, you know, if they had just left him to his own device and even plaintiff's experts said that, you know, the mistake they made was that they should have waited for more officers to take him to the ground. They, you know, they should have, he never said they shouldn't have taken him into custody. He never said that the, that they should not have attempted to get him this mental health that he needed. And so I do believe that the video blatantly contradicts and just the evidence in general, the phone call itself where someone calls and says, hey, I want the police here because people are trying to kill me. And, you know, the officers were young and they handled it very well. And they went, they talked to him, they tried to find out what he needed. They called their sergeant. They sought the type of supervision that you'd like to be guiding such officers. And so any reasonable officer, because the police are now, as you're all very aware, they're being tasked with these mental health issues, which are not criminal in nature and fall under the community caretaking function. And the courts are asking these officers to make sure they receive the mental health training they need so that they can provide that to these people. And based upon the evidence in the video, it's clear that there was a slight probability or a fair probability is the better way to put it, as the Supreme Court has defined probable cause, a fair probability that he required at least the detention for further investigation as to what he was going through and what help he actually needed. And I don't think there's any evidence that they are plainly incompetent or knowingly violated the law, which the plaintiff would need to show to defeat their qualified immunity argument. Does that answer your question? It does. Thank you, Counselor. All right. We'll put three minutes back on the clock for your rebuttal. Thank you. Good morning, Your Honors. If it pleases the Court, my name is Peter Goldstein. I represent the appellee. It's clear that we do have a mental health crisis in this country. There are numerous instances of persons that are suffering from a mental disorder or a mental crisis that are being shot and killed or killed in some manner by the police. But in this case, if I can just go through the chronology for a moment, and I want to take it to the ground, said please 63 times, begging the officers to not stay on top of him, not to use force on him. But starting in the beginning, the officers, Smith and Huntsman, they were young officers. They didn't know exactly what to do in this situation. They were both crisis intervention trained, which means that they had the 40 hours of mental health training that Metro provides. However, they had no knowledge of what to do in this case, so they called their sergeant. And their sergeant said, after they told him he's not coming to the door, leave. Just go ahead and leave. It's not a big deal. Go about your other assignments. But they didn't. They started shining the flashlight inside of his window, which of course is going to exacerbate any crisis or paranoia that Mr. Scott was suffering. And eventually, he came out. He came down the stairs, and the officers initially pulled their gun on him, and Mr. Scott dropped a pipe that he was carrying. And later on, he dropped, he handed one of the officers a kitchen knife, and he handed it, holding the blade, giving the handle to the officer. He begged them not to search him in a manner that requires him to face the wall because of his paranoia. He was begging them to understand his situation. So the district court, in a very well-reasoned, very, very articulate order, went through all the facts, and we've got to the point now where appellants believe that they can file interlocutory appeals on all these disputed issues of fact, which is not the whole purpose of the interlocutory appeal on the limited issue of qualified immunity. But I think they're forcing lawyers to take every case only if it matches a specific other case right on point. Otherwise, you're going to lose because we're going to appeal it to qualified immunity. I mean, this is burdensome for the plaintiffs to have to go through five years of litigation. And the Ninth Circuit issued a sua sponte order requesting a briefing on why this should be before us on the issue of interlocutory appeal and qualified immunity, because there's a question of fact. And unfortunately, the district court did not rule in our favor on the motion to dismiss the appeal. So here we are, relitigating the whole case over and over again. But getting back to the facts again, so the district court, Judge Boulware, in a very This incident, this person did not meet the criteria for a legal 2000, which is the same as a California 5150. He's the person suffering from a mental health crisis to the point where he is a danger to himself or others and needs to be evaluated for treatment. So they say we didn't plead false arrest. Well, that is technically not an arrest. When you take somebody in for legal 2000 for an evaluation, that's not deemed to be an arrest. So we didn't have the burden of pleading that. We didn't have to. In any event, the officers really did not know what to do. So Mr. Anderson argues that they were doing an investigation. Well, getting back to the point where after they handcuffed him and he's been on the ground for a while, he was prone for about a minute and 42 seconds with weight on his back and chest and shoulders because they both officers simultaneously placing weight on him. Let me let me ask you a question about Drummond. Is it the rule in Drummond, is the rule in Drummond limited only to cases where an individual is handcuffed? No, Your Honor. I've never seen that distinction. In fact, actually, if somebody is not handcuffed, there's there's evidence that the physiological distress can be more severe because there's more apt to struggle. But Drummond did not state that. Drummond did not state that at all. Weight on the back, whether or not the person is handcuffed or his arms are to the side, doesn't make any physiological difference. I mean, if his arms are to the side, he's almost trying to do a push up. That doesn't matter. They call that segmenting, which is no longer used in the in the training because you don't want to continue to place somebody in a position where you can impair their breathing. And this is what happened in this case. He died of cardiac failure from hypoxia. He could not breathe. He could not get air. So after they get him handcuffed, they put him on his side. They ignored him completely. I mean, there was no investigation. They're not asking him questions. And by the way, back to Mr. Anderson's point about he was a threat or he was a danger. They testified in deposition. He was not a danger to anybody. He certainly did not commit any crime. He wasn't he didn't appear to be a danger to himself. And there was no basis to take him in because the court noted that at the time of March 3, 2019, the legal 2000 statute specifically required that this be the result of a mental illness. And that criteria is a disputed fact about this. Don't we have to resolve that in in favor of the plaintiff? I believe you do. We do. Yes. Yeah, that's exactly what I believe is why we shouldn't be here today, because the court really this court should not have jurisdiction over disputed issues of fact. I mean, the court, the trial court, the district court determined what the facts were in a 32 page order, went through it line by line, what happened and determined that all the claims survive except for the denial of medical care, which we withdrew. The other claim, as far as the ADA violation, was only against Metro, not against the individual officers. Other than that, all of our claims survived. The excessive force, the Fourth Amendment violation, the 14th Amendment violation. So and speaking of the Monell claim, because that was brought up, Officer Huntsman testified in deposition that he had never been trained that placing weight on a suspect in a prone position can cause a danger of impaired breathing that could likely result in hypoxia. He said, no, I've never received that training. And ironically, this is what is so stunning in my opinion, the video in this case is actually used by Metro as a training video of what to do in the event you're trying to take a suspect into custody in a situation like this. They actually use this video, not the end where you see Mr. Scott pass away, but in the initial handcuffing, they use it as a training video. So that's ratification. They're basically saying, this is the way you do it, even though the end result was Mr. Scott died. And we see that. And by the way, Officer Smith testified in deposition in his statement that he did a sternum rub is where you take your knuckle basically and rub it against the person's chest to see if there's any reaction. It's a pain technique. So there's going to be some kind of reaction by the person. He did it once in the video and he went like this. He barely touched Mr. Scott. So they just basically left him to die. Now, we know that that claim was withdrawn in terms of the failure to provide medical care after they handcuffed him. But that to me, it's a sham investigation. They didn't really investigate the officer's conduct in this case. And they did not have probable cause under the statute to take Mr. Scott into custody for an evaluation. They didn't meet the criteria. The district court noted that and found that as a matter of law. They did not meet the criteria because they didn't believe that he was a danger to himself or others based on the fact that it was not the result of a mental health impairment. So we're talking about somebody who is never a threat to anybody, who said please 63 times, who is essentially begging for his life. And when you look at the video, and I noted this after viewing the video maybe 100 times, as they're trying to transport Mr. Scott and they're walking with him, you see one officer pivot. Now the body cam does not show his lower body, but you can see the pivot, the change in his body weight. And then immediately Mr. Scott starts to fall down. I believe that that's at least a factual question. Did he use his foot, do a leg sweep or a foot sweep to try to get Mr. Scott to fall to the ground? Because he did go right to the ground after that movement. So you've got the excessive force in the weight on the one minute 42 seconds on a prone person. And you've got the excessive force in the takedown. And the court noted in his order that that is at least a plausible factual question to be determined by a jury. So for the appellants to come in and ask to re-litigate the entire case based on a very well-reasoned, thought-out order determining what the facts are in this case and what the law is, I believe is a misuse of the interlocutory appeal process. I mean, there's a very narrow, limited scope to interlocutory appeal. And I don't believe, I believe that the motion to dismiss should have prevailed. This is not a case suitable to... Counsel, I'm going to turn your attention for a moment to the 14th Amendment claim. And I'd like to ask you, what is the most on-point case clearly establishing Rochelle Scott's 14th Amendment rights were violated? Well, I know that the Ninth and I believe the Tenth Circuit are the only circuits that recognize that standing. But that's not disputed. I mean, that is the law. And I believe Gonzalez v. Anaheim and some other cases determined that. And I don't recall specifically what was the most on-point case for the 14th Amendment standing claim. But that is the law. In fact, in the appellant's brief, they argued that, well, that's the law in the Ninth and Tenth Circuit. However, in other circuits... I'm asking you about what case in particular you have that goes to the clearly established prong. So what case can you point to that says, this is the law that tells us that a 14th Amendment claim is clearly established? That the constitutional violation is clearly established? If you give me one moment, I didn't anticipate that exact question. So let me search. I'm almost there. Well, we argued Greer, which is on the time to deliberate on the issue of the 14th Amendment. And we argued Garlick, time to deliberate. But as far as the standing issue, I didn't think it was really disputed that there is standing allowed in the Ninth Circuit for an adult child to sue on behalf of her deceased father. I know some cases, I mean, the damage is maybe limited. There's no economic damages in that case for the 14th Amendment claim. She wasn't dependent upon Mr. Scott for support. But there's no... Yeah, I don't have a case... I guess the question is not standing. The question is under the 14th Amendment, is there a case that discusses using unawarded force when restraining a suspect under the 14th Amendment? Is it clearly established that police officers violate a plaintiff's 14th Amendment right by using unwarded force when restraining a suspect under the 14th Amendment? Clearly under the 14th Amendment. Yeah, if you can show either a deliberate indifference or a purpose to harm, the purpose to harm is only when there is not time to deliberate, but there is a body of law on the question of whether or not there's deliberate indifference. And the purpose to harm standard only comes in when the officer does not have time or does have time to look... Does not have time to deliberate. So in this case, the officers had time to consider their actions and what they were doing and to assess what's going on, to call for more help, to call for the sergeant again to see what's going on. It's a higher standard, a higher burden for the plaintiffs in these cases to prove the 14th Amendment claim, but it's not really a disputed claim in the Ninth Circuit. Parents and children have standing to sue on behalf of their adult, either parents or children, and other circuits may not have that same standing, but Ninth and Tenth do. Mr. Goldstein, you're out of time. Maybe you want to make a closing statement. Certainly, Your Honor. Thank you. I just thought that the limited scope of the review, the fact that the court, the trial district court determined that there was no probable cause based on a very specific reading of the statute, which at the time was different than it is now, but required that all those elements of, you know, a danger to himself or others, which he was not, he didn't, and the officers testified as to all of that. They were never in danger. He did not commit any crime at all. He was in his apartment. Thank you, Mr. Goldstein. Thank you, Your Honor. Your Honors, thank you very much. Thank you for the extra time. I'll be brief. And I think what we just learned is that there are no cases directly on point clearly establishing this law. When you asked Mr. Goldstein about whether there's any case law saying that Drummond applies to pre-handcuffing force, he said yes, but didn't give you a case, because there's not one. If you go to page 45 and 46 of my brief, I cite eight cases. None of them with, none of them were published Ninth Circuit decisions, but they're cases interpreting Drummond. Every one of them says it applies to post-handcuffing prolonged use of force. In fact, in Drummond's conclusion, in his own opinion, it says this applies to prolonged use of body weight force. He just said yes, but couldn't give you one case that applied to pre-handcuffing force. So the appeal is justified. This is a proper interlocutory appeal, because even the district court, which Mr. Goldstein cited to as well, reasoned and clear, the two cases that it gave you was Young v. County of Los Angeles and Bryan v. McPherson. Young v. County of Los Angeles is a case where an officer beat a guy eating broccoli with a baton. Hardly the facts we have in this case. The case of Bryan McPherson was a taser case where a gentleman was standing in the street upset and an officer tased him in dart mode when he was not a threat. Not even the district court could find one case that said that pre-handcuffing use of body weight is unconstitutional. And so under the clearly established prong, even accepting all the plaintiff's facts is true, there would still have to be qualified immunity on those grounds. Because there is no case on point that says using body weight to restrain someone. And the best cases is Drummond is basically on point with this case. Drummond is right in point with the severity of the crime, what the suspect was doing, what the officers did. The difference is in Drummond, they stayed on him for 20 minutes. Two officers, full body weight, sat on him for 20 minutes. Here the officers were off within eight seconds. And so it's easily distinguishable and there should be qualified immunity granted on that. I agree with Your Honors on the 14th Amendment. The issue is not standing. I understand that you two cannot, I mean, that you three cannot create a new rule that there's not standing. I just put that in there to preserve it in case this were to go up on prong to get that changed. But there is no evidence in this case that these officers were acting for any reason other than a legitimate law enforcement objective, which is the 14th Amendment standard. That they have to have a purpose to harm unrelated to any legitimate law enforcement standard. There's just no evidence of that in this case. And the 14th Amendment claim should have been dismissed as well. Unless you have any questions, I will stop. No. Thank you very much. Thank you, Your Honors. This case is now submitted.
judges: DESAI, ALBA, Gutierrez